PEOPLE v BOUCHEE

1. CRIMINAL LAW—EVIDENCE—RELIGION—RELIGIOUS TESTIMONY—AD-
    MISSIBILITY—CROSS-EXAMINATION—PROSECUTORS.

    A criminal defendant who testifies on his own behalf and on his
    own initiative opens the subject of religion and presents him-
    self as a virtuous, religious, God-fearing man who believes in
    the Bible invites a clarifying inquiry by the prosecution and
    may not complain that the court permitted his religious beliefs
    and those of a character witness to be scrutinized; to hold
    otherwise would tie the prosecution to reversible error by any
    reference to religion and give a defendant an irrebuttable
    religious credential if he chose to offer religious testimony.

2. WITNESSES—CRIMINAL LAW—DEFENDANT AS WITNESS—EVIDENCE—
    ADMISSIBILITY—PRIOR CRIMINAL RECORD—PROOF—CROSS-EXAMI-
    NATION—IMPEACHMENT—FALSE TESTIMONY.

    A prosecutor may cross-examine a criminal defendant who has
    taken the stand on his own behalf about his prior criminal
    record where the defendant has testified on direct-examination
    that he has no criminal record; the prosecution's cross-examina-
    tion is not permitted for the general purpose of denigrating the
    defendant's character, but rather for the special and narrow
    purpose of demonstrating that the defendant has given false
    testimony on direct-examination.

3. WITNESSES—CRIMINAL LAW—DEFENDANT AS WITNESS—EVIDENCE—
    ADMISSIBILITY—CONVICTIONS—MISDEMEANORS—OBJECTIONS—
    MANIFEST INJUSTICE.

    Evidence of a defendant's prior misdemeanor convictions was
    properly admitted for the purpose of impeaching the testimony
    of the defendant in a criminal case tried prior to June 25, 1974,
    the date of a Supreme Court decision prohibiting the use of
    such evidence, where the defendant did not object to the
    admission of the evidence and no manifest injustice resulted.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 597.
[2, 3] 29 Am Jur 2d, Evidence § 320 *et seq.*
[4] 29 Am Jur 2d, Evidence § 818.

4. Criminal Law—Evidence—Collateral Evidence—Admissibility
   —Cross-Examination—Discretion—Inferences—Appeal and
   Error.

   The discretion of the trial judge controls the nature and extent of
   the introduction of collateral matters upon cross-examination
   and will never be reviewed except in cases of abuse, and this
   will not be lightly inferred.

Appeal from Kalamazoo, Raymond W. Fox, J. Submitted Division 3 May 6, 1975, at Grand Rapids. (Docket No. 20946.) Decided June 11, 1975. Leave to appeal granted, 395 Mich 754.

Willie L. Bouchee was convicted of assault with intent to rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *Michael Slaughter,* Assistant Prosecuting Attorney, for the people.

*McKinley & Jerkins* (by *George S. Silaski),* for defendant.

Before: R. B. Burns, P. J., and Bashara and M. J. Kelly, JJ.

M. J. Kelly, J. Defendant was charged with the crime of assault with intent to rape. MCLA 750.85; MSA 28.280. The offense was alleged to have occurred on November 22, 1972. A jury trial commenced on March 28th and concluded on April 1, 1974. Defendant was convicted and sentenced to a prison term of 4 to 10 years. He appeals of right.

The complaining witness, in her early twenties, testified that defendant, in his early fifties, hoodwinked her into a luncheon appointment on the ruse of an employment interview. After lunch in a local restaurant defendant drove her to a secluded spot and, according to the complainant, forceably

attempted rape. While defendant was out of the car, apparently attempting to get from the front seat into the back seat, the victim escaped by the simple expedient of driving off in defendant's car.

Defendant admits the luncheon date but denies the employment interview; admits driving to the secluded area but contends that the complaining witness had designs on a certain $100 bill which he inadvertently presented while paying for the luncheon fare. The trial was vigorously contested with the defendant at times tripping over his own testimony. Defendant raises five issues on appeal.

## I

## Religion

He first contends that it was prejudicial error for the court to allow scrutiny of the religious beliefs of the defendant and of a character witness who introduced himself as the minister of The Church of God In Christ.

The difficulty with defendant's argument is that he presented himself as a virtuous, religious, God-fearing man who believed in the Bible. In each instance the defense opened the subject. Defendant first vouched for himself as a truthful man "so help me God", and then reinforced the impression by mentioning his membership in the church, his strict belief in the Bible and his oath to tell the truth "and God knows it is my intention to do it". We believe that the defendant's initiative in putting his religious credentials before the jury invited clarifying inquiry by the people. On these grounds we distinguish the facts in this case from *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969), and *People v Hall,* 391 Mich 175; 215 NW2d 166 (1974). To hold otherwise would tie the

people to reversible error by any reference to religion. It would give any accused an irrebuttable religious credential if he chose to offer such testimony. Furthermore, in the instant case there was no objection to the testimony and we certainly cannot say on this record that any prejudice occurred.

## II

### Criminal Record

Defense counsel in his opening statement vouched for defendant as having "never been involved in anything like this before", and said, "He will also indicate to you that he doesn't have a criminal record, not been in trouble before, never been convicted of anything before". One of the first questions asked by defense counsel on direct examination:

*"Q.* All right. Have you ever been convicted of any crimes in your life, Mr. Bouchee?
*"A.* No, I haven't."

Later, after extensive direct examination:

*"Q.* You indicated that you never had any convictions.
*"A.* No, I never have."

The defendant, it turned out, had been convicted of assault with intent to commit rape while in the service in Germany in 1950. After his lawyer's objection, defendant testified on a special record outside the hearing of the jury that he was not represented by counsel at his court-martial. See *Loper v Beto,* 405 US 473, 480; 92 S Ct 1014; 31 L Ed 2d 374 (1972). The trial judge and counsel

agonized over the *Loper* decision at great length and the court finally made this ruling:

"To get to this case right here and now the question of the defendant's prior criminal record came into this case because defense counsel asked his own witness and injected into the case and got the answer no, he didn't. Defendant wants to benefit and have the impression upon the jury that he has no criminal record and I will not stop the prosecutor from proving that he .has a prior criminal record the way it arose. If the defendant had not injected the absence of a criminal record into the case, I think I would look at it in a different light, but having injected it into the case, I will permit the prosecutor to ask it.

"Now, this witness, this defendant, on direct examination said he had no record, had not been convicted. On a part of a separate record he admitted that he did so his first answer that he had no record was not based upon any claim that his conviction was void else why did he admit he did on a separate record? I am going to let the prosecutor go into that. You may bring the jury back."

The trial judge's thinking is clear and an examination of the transcript indicates that the right-to-counsel question was suggested by alert defense counsel after the defendant had misrepresented his past record knowingly and intelligently under oath. We believe that the record reflects that the defendant offered false testimony and that the prosecutor was allowed to show that defendant misrepresented his record in an attempt to mislead the jury. The defendant's testimony opened the door to rebuttal testimony, or what McCormick calls "fighting fire with fire". McCormick, Evidence (2d ed), § 57, pp 131, 132.

The record reveals that the cross-examination was *not* permitted for the general purpose of denigrating defendant's character. Rather, it was ad-

mitted for the special and narrow purpose of demonstrating that defendant had given false testimony on direct examination. The trial court's ruling is fully supported by the reasoning of *People v Graham,* 386 Mich 452; 192 NW2d 255 (1971). Compare *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973).

## III

### Misdemeanor Convictions

After noting the court-martial conviction, the prosecutor brought out two misdemeanor convictions for drunk and disorderly; one in 1960 and one in 1972. Defendant does not have the benefit of *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), as the decisional date of *Renno* is June 25, 1974. This Court has recently held that *Renno* is not retroactive in *People v Phelps,* 57 Mich App 300, 307; 225 NW2d 738 (1975). Furthermore, there was no objection to the testimony concerning the prior convictions and we find no manifest injustice on the basis of the record in this case.

## IV

### Cross-examination of Defendant's Wife

The defense at trial put the estranged wife of the defendant on the stand to, in the vernacular, take the shine off the complaining witness. It backfired. The defense theory, set forth in the opening statement, was the defendant's righteousness. Reference was made to his wife and family in the opening statement and his wife was the first witness for the defense. She testified that the complaining witness was flirting with a couple of boys who had brought a dog into the laundromat.

They were black men and she, the complaining witness, "was inviting them to bring [their] dog out and let him run around in her yard".

In the course of cross-examination the people brought out that the Bouchees' four children were all born before they were married. This line of inquiry was allowed by our Supreme Court in *People v LaLonde,* 197 Mich 76; 163 NW 490 (1917), as affecting the credibility of the witness. The scope of cross-examination is a matter left to the discretion of the trial judge. *People v LaLonde, supra, People v MacCullough,* 281 Mich 15; 274 NW 693 (1937). In the latter case the Court said (281 Mich at 24, 25):

"The discretion of the trial judge controls the nature and extent of the introduction of collateral matters upon cross-examination and will never be reviewed except in cases of abuse and this will not be lightly inferred."

It should be noted that the trial court permitted defendant a great deal of latitude in direct-examination of defense witnesses and cross-examination of prosecution witnesses. In view of the entire record and the tactics of the defense, we do not believe that the trial judge abused his discretion. See *People v Jolly,* 51 Mich App 163; 214 NW2d 849 (1974).

V

Prosecutorial Argument

Finally, the defendant complains of the prosecutor's closing argument. There was no objection at trial and we are not required to review this citation of error. *People v Smyers,* 47 Mich App 61;

209 NW2d 281 (1973). In addition, we believe that the prosecutor was legitimately arguing credibility from the evidence which he considered relevant.
   Affirmed.