*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CLINT DARRELL WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No. 364032
Kalamazoo Circuit Court
LC No. 2022-000308-FC

Before: SWARTZLE, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Defendant appeals by right his jury convictions of armed robbery, MCL 750.529; and unlawful imprisonment, MCL 750.349b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve concurrent terms of 24 to 40 years' imprisonment for armed robbery and 12 to 30 years' imprisonment for unlawful imprisonment. We affirm.

## I. FACTUAL BACKGROUND

This case stems from an armed robbery that took place inside a Dunham's Sports store in February 2022 during which a man forced the victim, Ethan Wood, a Dunham's employee, into the men's restroom, pulled out a gun, pointed it at Wood, demanded that Wood hand over his keys, and threatened to shoot Wood if he did not comply. After the robbery, the store's manager contacted law enforcement to report the incident. The responding officers were provided access to the store's surveillance video footage. After reviewing the video, the officers had a suspicion that defendant committed the robbery, based on the officers' previous encounters with defendant and the distinctive manner of walking of the suspect recorded in the surveillance video, which matched the way defendant walked. The next day, officers visited an inn that defendant frequented and observed him walking along the nearby sidewalk displaying his distinctive stride. The officers stopped defendant on unrelated outstanding warrants and discovered that defendant carried a pocket knife, a set of keys, and a BB or airsoft-style handgun that, at first glance, appeared to be a real handgun. The set of keys were identified as Wood's, so the police arrested defendant and charged him with armed robbery and unlawful imprisonment. During defendant's police

-1-

interview, he admitted that the gun was the same gun used during the robbery at Dunham's. Defendant also acknowledged that the robbery took place and that he scared an employee.

At his trial, however, defendant testified that his acquaintance, Michael Larthridge, committed the robbery and that defendant took the fall for him. Defendant further testified that, during his police interview, he provided the officers with the details that Larthridge told him, and that he also agreed to any additional details that the officers offered. Defendant essentially testified that he lied during his police interview and was not the person who committed the armed robbery. The jury found defendant guilty of armed robbery and unlawful imprisonment.

At defendant's sentencing hearing, the trial court adjusted the scoring of sentencing guidelines offense variables (OVs) by assessing 5 points for OV 1, not 15 points as originally assessed; 0 points for OV 2, originally 5 points; 0 points for OV 10, originally 5 points; and 25 points for OV 13, originally 0 points. After making these changes, defendant's total OV score of 55 points place him at OV Level III. As a fourth-offense habitual offender, the trial court calculated defendant's minimum sentencing guidelines range as 135 months to 450 months (11.25 years to 37.5 years). The trial court sentenced defendant as described previously. Defendant now appeals.

## II. ANALYSIS

Defendant argues that he was deprived of his constitutional right to a fair trial in four ways: (1) testimony given by a police officer involved in the investigation impermissibly encroached on the province of the jury, (2) the prosecution engaged in improper and prejudicial cross-examination of defendant, which amounted to prosecutorial misconduct, (3) the trial court's commentary following the admission of a defense exhibit pierced the veil of judicial impartiality, and (4) the trial court erroneously refused to instruct the jury on a lesser included offense of armed robbery— larceny from the person—as he requested. Defendant also argues that he is entitled to resentencing because OVs 1, 2, 8, and 10 were incorrectly scored, which resulted in him being sentenced outside his correctly scored minimum sentencing guidelines range.

## A. WITNESS TESTIMONY

Defendant first argues that he was deprived his constitutional right to a fair trial because the trial court permitted testimony from one of the investigating officers, on the ground that the testimony encroached on the province of the jury. We disagree.

We review "for an abuse of discretion the trial court's evidentiary rulings that have been properly preserved." *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted).

MRE 602 provides, in pertinent part, that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Further, MRE 701 permits a lay witness to provide testimony in the form of an opinion if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." A witness cannot,

however, "express an opinion on the defendant's guilt or innocence of the charged offense." *Id*. at 48-49.

Kalamazoo County Sheriff Deputy Bailey Kloosterman testified regarding his identification of potential suspects from his viewing the store's surveillance video footage which depicted the perpetrator's stature and movement within the store. Deputy Kloosterman stated that he thought about persons the police had encountered who might match the description. The prosecution asked Deputy Kloosterman to describe the suspect's stature and walk. Deputy Kloosterman began testifying how the suspect appeared in the surveillance footage, but defense counsel cut off his testimony and objected, arguing that the jury had seen the video which spoke for itself, and the jury did not need the witness's editorial comments on what he thought the video showed. The prosecution argued that the witness would testify regarding his personal observations of the video and that those observations led him to further the investigation. The trial court denied the objection and permitted Deputy Kloosterman to testify as to what the video meant to him and led him to do. The record reveals that Deputy Kloosterman explained how the perpetrator's walk featured a distinct limp that suggested an injury to the right foot or leg. Deputy Kloosterman also testified that the perpetrator in the video appeared to be at least six feet/six inches. Deputy Kloosterman explained that viewing the surveillance video led him to consider defendant a suspect which caused him to conduct further investigation. The record reveals that the testimony featured Deputy Kloosterman's rationally based perception of the surveillance footage which helped the jury understand how Deputy Kloosterman used the video as part of the investigation of the crime to identify possible suspects. The trial court properly admitted Deputy Kloosterman's testimony under MRE 701 and did not abuse its discretion by doing so.

Defense counsel made a second objection to Deputy Kloosterman's testimony when he testified that the boots that defendant wore when police stopped him appeared to be the same boots depicted in the store's surveillance footage. Defense counsel argued that such testimony was not based on personal knowledge and merely speculative. Although Deputy Kloosterman did not definitively know that the boots that defendant wore came from the store, he based his testimony on his personal observations of defendant's boots and the boots depicted in the surveillance video footage. The trial court properly admitted Deputy Kloosterman's testimony of the surveillance video footage and defendant on the day of his arrest under MRE 701 because it was rationally based on his perceptions and it assisted the jury in understanding his investigation and the conclusions he drew from the evidence collected during that investigation. Therefore, the trial court did not abuse its discretion when it permitted his testimony.

## B. PROSECUTORIAL MISCONDUCT

Defendant next argues that the court deprived him of his constitutional right to a fair trial because the prosecution questioned defendant about his experience with the criminal justice system during cross-examination. Defendant contends that this constituted prosecutorial misconduct that warrants a new trial. We disagree.

We review a claim of prosecutorial misconduct "de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Prosecutorial misconduct is a nonstructural error subject to the harmless-error standard. *People v Abraham*, 256 Mich App 265, 276; 662 NW2d 836 (2003). Such an error is

harmless if "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *People v Mass*, 464 Mich 615, 640 n 29; 628 NW2d 540 (2001) (quotation marks and citation omitted).

"A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). A defendant's right to a fair trial can be denied when the prosecution makes improper remarks that "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Id*.; see also *Darden v Wainwright*, 477 US 168, 181; 106 S Ct 2464; 91 L Ed 2d 144 (1986). We evaluate "instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments." *Lane*, 308 Mich App at 62-63. Further, our Supreme Court has held that "[i]t is elementary that any witness who testifies, including a defendant in a criminal case, 'puts in issue' his credibility, or as it is sometimes called, his character for truthfulness." *People v Bouchee*, 400 Mich 253, 266; 253 NW2d 626 (1977). "Cross-examination is a critical method of testing a witness's credibility and exposing weakness in a witness's account. And it is appropriate that cross-examiners be afforded wide latitude to do their job." *People v Evans*, 335 Mich App 76, 90; 966 NW2d 402 (2020).

Before defendant testified on his own behalf, defense counsel and the trial court agreed that defendant's prior criminal convictions would not be discussed during cross-examination because of staleness. However, the trial court cautioned defense counsel that, if defendant took the stand and said that he had no experience with the criminal justice system, he risked opening up all of his prior criminal convictions for impeachment purposes. During direct examination, defendant testified that he had been "[i]ndulging in criminal activity." At the start of cross-examination, the prosecution asked defendant in what forms of criminal activity he had been indulging, to which defense counsel objected, arguing that the line of questioning moved into the realm of MRE 609. The trial court permitted the prosecution to ask defendant to elaborate on what he meant by indulging in criminal activity. Defendant testified that he had previously been incarcerated, in trouble with law enforcement, and questioned by law enforcement.

Throughout this line of questioning, the prosecution did not ask about specific crimes that defendant committed. Instead, the prosecution's questioning focused on defendant's past interactions with law enforcement, which seemingly established defendant's familiarity with the investigation process. This was imperative to the prosecution's case because defendant appeared to attempt to have the jury believe that the police manipulated defendant into falsely confessing to commission of the charged offenses. The record reflects that defense counsel questioned Detective Sergeant Warren Misner whether he had a picture of defendant's former girlfriend in a folder during defendant's interview, whether the police use psychological pressures during interviews as tactics to get suspects to confess, and whether his job entailed getting a suspect to make an incriminating statement. Under the circumstances presented in this case, the prosecution reasonably attacked defendant's credibility by eliciting testimony during cross-examination of his experience with law enforcement to reasonably suggest to the jury that defendant would not easily fall for manipulative tactics that law enforcement employed. Such questioning did not constitute prosecutorial misconduct.

## C. JUDICIAL PARTIALITY

Defendant next argues that the trial court deprived him of his constitutional right to a fair trial by commenting regarding a defense exhibit, which he claims pierced the veil of judicial impartiality. We disagree.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). "When the issue is preserved and a reviewing court determines that a judge has pierced the veil of judicial impartiality, a structural error has been established that requires reversing the judgment and remanding the case for a new trial." *Id*. at 178. However, because defendant failed to object to the trial court's remark based on piercing the veil of judicial impartiality, the issue is not preserved for appellate review. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). We review unpreserved claimed constitutional errors "for plain error affecting a defendant's substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. (citation omitted). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 764-765 (quotation marks, citation, and alteration omitted).

The conduct of the trial court "deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 164. See also *Bracy v Gramley*, 520 US 899, 904-905; 117 S Ct 1793; 138 L Ed 2d 97 (1997). The trial court's "conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Stevens*, 498 Mich at 164. In reviewing a claim of judicial partiality, we first consider "the nature or type of judicial conduct itself." *Id*. at 172. "Identifying the nature of the conduct provides the starting point to evaluate whether the conduct overstepped the line of judicial impartiality." *Id*. at 173. "Improper judicial conduct may come in many forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *People v Swilley*, 504 Mich 350, 371-371; 934 NW2d 771 (2019) (quotation marks and citation omitted).

In this case, the contested comment occurred during the trial court's ruling on the prosecution's objection to the admission of Defense Exhibit A, a document from the Kalamazoo County Sheriff's Office that indicated the dates of incarceration of Michael Larthridge, the acquaintance whom defendant testified committed the armed robbery. The exhibit showed that Larthridge was not in custody at the time of the armed robbery, which was consistent with defendant's and Larthridge's parole officer's testimonies. The prosecution objected to its admission on relevancy grounds. The trial court overruled the prosecution's objection and stated in the presence of the jury that the exhibit could be admitted "for what it's worth." Defendant claims the remark expressed bias.

After identifying the nature of the judicial conduct, we consider "the tone and demeanor the trial judge displayed in front of the jury." *Stevens*, 498 Mich at 174. In this case, the trial court's comment regarding the exhibit does not appear to indicate bias against defendant or in favor of the prosecution. Although the statement "for what it's worth" could be interpreted as an opinion of the exhibit's value, read in context, the trial court's comment appears to be directed toward the prosecution's argument that the exhibit lacked relevancy because most people were not incarcerated at the time the armed robbery occurred. Our conclusion is supported by the fact that the trial court made no other comments throughout the trial that indicated any bias against defendant or in favor of the prosecution. The record does not indicate a biased or condescending tone and the court's remark did not elicit an objection or prompt other action by defense counsel.

Once tone and demeaner are considered, we next consider "the scope of judicial intervention within the context of the length and complexity of the trial, or any given issue therein." *Id*. at 176. The record does not indicate or even suggest that the trial court unnecessarily intervened throughout the trial; rather, the trial court only intervened to address the parties' respective objections. Concerning the contested comment, the trial court minimally intervened as needed to understand the reason the exhibit had relevance and to rule on its admissibility.

After the length and complexity are reviewed, we consider "the extent to which a judge's comments or questions were directed at one side more than the other." *Id*. at 176-177. "Judicial partiality may be exhibited when an imbalance occurs with respect to either the frequency of the intervention or the manner of the conduct." *Id*. at 177. The record shows that the trial court did not direct significantly more questions or comments to defense counsel than the prosecution. Further, the manner in which the trial court questioned the attorneys and provided commentary on the evidence was similar for defense counsel and the prosecution. The record does not establish that the trial court commented or questioned defense counsel more than the prosecution, nor did the trial court act disproportionately toward either party.

We also consider "the presence or absence of a curative instruction." *Id*. at 177. "[D]uring the course of a proceeding, a trial judge has the ability to issue a curative instruction immediately in response to conduct that could give rise to the appearance of bias." *Id*. In this case, the trial court did not give an immediate curative instruction after the trial court ruled on the exhibit's admissibility. However, during final jury instructions, the trial court instructed the jury as follows:

> As jurors, you must decide what the facts of this case are. This is your job, and nobody else's. You must think about all the evidence and then decide what each piece of evidence means and how important you think it is.
>
> * * *
>
> My comments, rulings, questions, and instructions are also not evidence. It is my duty to see that the trial is conducted according to the law, and to tell you the law that applies to this case. However, when I make a comment or give an instruction, I'm not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judges of the facts, and you should decide this case from the evidence.

Because jurors are presumed to follow the instructions provided by the trial court, *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008); see also *Weeks v Angelone*, 528 US 225, 234; 120 S Ct 727; 145 L Ed 2d 727 (2000), the final jury instructions cured any prejudicial effect the trial court's comment during the admission of Defense Exhibit A may have had.

## D.  JURY INSTRUCTIONS

Defendant argues further that the trial court deprived him of his constitutional right to a fair trial by refusing to instruct the jury on larceny from the person which he asserts is a necessarily included lesser offense of armed robbery.  We disagree.

Whether larceny from a person is a lesser included offense of armed robbery is "a question of law, which this Court reviews de novo." *People v Nickens*, 470 Mich 622, 626; 685 NW2d 657 (2004).  However, "a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (quotation marks and citation omitted).  A defendant's request for an instruction on a lesser included offense presents a preserved, nonconstitutional error. *People v Cornell*, 466 Mich 335, 364; 646 NW2d 127 (2002).  Our Supreme Court has held that "harmless error analysis is applicable to instructional errors involving necessarily included lesser offenses[.]" *Id*. at 361.  Accordingly, such an error does not warrant reversal unless "it is more probable than not that the error was outcome determinative." *Id*. at 364 (quotation marks and citation omitted).  "Therefore, to prevail, defendant must demonstrate that it is more probable than not that the failure to give the requested lesser included [offense] instruction undermined reliability in the verdict." *Id*.

Our Supreme Court explained that "a requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *Id*. at 357.  An offense is a necessarily included lesser offense if "[i]t is impossible to commit the greater offense without first committing the lesser offense." *Id*. at 361.

In *Nickens*, our Supreme Court explained:

> a lesser offense instruction is appropriate only if the lesser offense is necessarily included in the greater offense.  Necessarily included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense.  Thus, an instruction on a lesser offense is proper where all the elements of the lesser offense are included in the greater offense, and a rational view of the evidence would support such an instruction. [*Nickens*, 470 Mich at 626 (quotation marks and citations omitted).]

Before final jury instructions were given, defendant requested that the trial court instruct the jury on two lesser included offenses of armed robbery—unarmed robbery and larceny from the person.  In making its decision to instruct the jury on unarmed robbery, but not larceny from the person, the trial court stated:

> Here there are no disputed facts, and I don't believe that there is a rational view of the evidence that could lead the jury to support a finding of guilt on people—larceny from the person.  There is undisputed evidence that either

something was—that either a weapon was used or something to cause a reasonable person to believe that a weapon was being used. That's what's there.

On appeal, defendant argues that, if a rational view of the evidence supported a finding of guilt for unarmed robbery, it also should have supported a finding of guilt for larceny from the person. We disagree.

The elements of armed robbery are (1) larceny, (2) use of force or violence against a victim or placing the victim in fear, and (3) possession of a dangerous weapon or an article fashioned in a manner that would cause a reasonable person to believe that the article is a dangerous weapon. MCL 750.529. The elements of unarmed robbery are (1) larceny, and (2) use of force or violence against a victim or placing the victim in fear. MCL 750.530. The elements of larceny from the person are (1) larceny, and (2) from the person of another. MCL 750.357. Analysis of the elements of the three offenses permits the conclusion that the commission of armed robbery involves both unarmed robbery and larceny from the person. Larceny from the person is subsumed within the two other offenses. Therefore, larceny from the person is a necessarily included lesser offense of armed robbery.

The trial court, however, was not obligated to instruct the jury on both necessarily included lesser offenses unless a rational view of the evidence would support such an instruction. As explained in *Cornell*, "a requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *Cornell*, 466 Mich at 357. A review of the elements of the offenses indicates that a factual dispute as to the use of a weapon would need to be apparent for the trial court to instruct on armed robbery and unarmed robbery, and a factual dispute as to both the use of a weapon and the use of force would need to be apparent for the trial court to instruct on all three offenses. The elements of larceny from the person does not require proof of either fact. As the trial court noted, the record does not indicate a factual dispute as to the use or possession of a dangerous weapon. A dispute as to the dangerous nature of the weapon existed, given that defendant used a BB or airsoft gun rather than a firearm, but the trial court did not need to instruct on larceny from the person unless a disputed factual issue existed whether defendant used a weapon and force against Wood or placed Wood in fear. The record reflects that no dispute existed as to the use of a weapon or defendant's placing Wood in fear. The evidence established that defendant forced Wood at gun point into the men's restroom and threatened to shoot him if he did not hand over his keys. Wood's testimony established that defendant's conduct placed him in fear of being harmed, which goes beyond the offense of larceny from the person. Therefore, a rational view of the evidence did not support a finding of guilt for larceny from the person because evidence established that defendant used force during the commission of the robbery. Defendant therefore, was not entitled to an instruction on larceny from the person.

## E. SENTENCING

Defendant also argues that he is entitled to resentencing because OVs 1, 2, 8, and 10 were improperly scored, resulting in him being sentenced outside of his correctly scored minimum sentencing guidelines range. We disagree.

In reviewing a trial court's scoring of the sentencing guidelines, its "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). Clear error exists when we are "left with a definite and firm conviction that a mistake was made." *Id.* "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . is a question of statutory interpretation," which we review de novo. *Id.* However, an unpreserved challenge to the scoring of the guidelines is reviewed for plain error affecting substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004). Defendant preserved the issue of the scoring of OVs 1, 2, and 10 by objecting to their scoring at his sentencing hearing. However, defendant failed to object to the scoring of OV 8, which means he did not preserve that claimed error for appellate review. To establish plain error, a defendant must prove that "1) [an] error . . . occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. To satisfy the last element, a defendant must generally show prejudice, "i.e., that the error affected the outcome of the lower court proceedings." *Id.*

"Under the statutory sentencing guidelines, the trial court must score the applicable offense and prior record variables to determine the appropriate range for the minimum sentence." *Kimble*, 470 Mich at 309. Although the "sentencing guidelines are advisory in all applications," *People v Posey*, 512 Mich 317, 325; ___ NW2d ___ (2023), "[a] defendant is [still] entitled to be sentenced by a trial court on the basis of accurate information," *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). "A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002). It "may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (quotation marks and citation omitted). Resentencing is an appropriate remedy when "a defendant's sentence is based on an inaccurate calculation of the sentencing guidelines range and, therefore, does not conform to the law." *People v Underwood*, 278 Mich App 334, 337; 750 NW2d 612 (2008).

Defendant argues that OVs 2 and 10 were erroneously assessed five points each. The sentencing information report, however, shows that zero points were assessed for OVs 2 and 10. The trial court decided during defendant's sentencing hearing to assess defendant zero points for OVs 2 and 10. Therefore, defendant's arguments on appeal pertaining to OVs 2 and 10 are moot.

As for OV 1, the prosecution concedes that the trial court erroneously assessed five points. MCL 777.31(2)(e) states that a trial could should "not score 5 points if the conviction offense is a violation . . . MCL 750.82 and 750.529." The jury convicted defendant of armed robbery, MCL 750.529; therefore, the trial court clearly erred by assessing defendant five points for OV 1. Subtraction of the 5 points erroneously assessed for OV 1 reduces defendant's total OV score to 50 points, rather than 55 points. With such correction, defendant's OV score still places him at OV Level III, which means that his minimum sentencing guidelines range remains unchanged. To warrant resentencing, defendant must establish that the trial court also erroneously assessed points to OV 8.

MCL 777.38 provides that 15 points must be assessed for OV 8 if "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense[.]" The term "asported," in the context of OV 8, is not statutorily defined. However, our Supreme Court has held that "[a] plain reading of asportation is this: If a victim is carried away or removed 'to another place of greater danger or to a situation of greater danger,' MCL 777.38(1)(a), the statutory language is satisfied." *People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017). This Court has interpreted "another place" or "situation of greater danger" to include a location "away from the presence or observation of others," *People v Chelmicki*, 305 Mich App 58, 70-71; 850 NW2d 612 (2014), and "places where others [are] less likely to see [the] defendant committing crimes." *People v Steele*, 283 Mich App 472, 491; 769 NW2d 256 (2009).

The trial court did not address the scoring of OV 8 at defendant's sentencing hearing because defendant did not object to its scoring; however, the Michigan Department of Corrections, in crafting defendant's presentence investigation report, noted that 15 points were assigned to OV 8 because defendant "forc[ed] the victim into a separate room of the business and instruct[ed] him not to leave or he'll shoot him." According to Wood's testimony, defendant pushed Wood backward toward the restrooms and forced Wood to unlock the men's restroom and enter it. This testimony strongly suggests that Wood did not enter the restroom voluntarily, but rather did so to appease defendant and avoid defendant using greater force against him to make him comply. Therefore, defendant "asported" Wood to the restroom, which, under our jurisprudence, constituted a place of greater danger. Although nothing in the record explicitly states that another employee was nearby when Wood was in the hunting department, removing Wood to the restroom constituted a tactic to ensure no other employees would witness defendant's robbery of Wood. Because the restroom was a location "away from the presence or observation of others," *Chelmicki*, 305 Mich App at 70-71, it constituted a place of greater danger under the statutory language that governs the scoring of OV 8. Therefore, the trial court did not clearly err when it assigned 15 points for OV 8 because defendant asported Wood to a place of greater danger. In sum, absent the erroneous scoring of OV 1, defendant's total OV score equaled 50 points, resulting in OV Level III. Because this does not alter the minimum sentencing guidelines range, defendant is not entitled to resentencing.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Christopher P. Yates