PEOPLE v BURTON

Docket No. 59529. Decided October 6, 1977. On application by the people for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the decision of the Court of Appeals.

Arthur J. Burton was convicted by a jury in Wayne Circuit Court, John D. O'Hair, J., of first-degree murder. The Court of Appeals, D. E. Holbrook, Jr., P. J., and N. J. Kaufman and D. C. Riley, JJ., reversed in a per curiam opinion because the prosecutor had asked the defendant on cross-examination whether he believed in God (Docket No. 23610). The people apply for leave to appeal. *Held:*

The trial judge intervened immediately after the prosecutor asked the defendant if be believed in God, ordered the question stricken, directed the jury to disregard it, and inquired whether the defendant realized he was still under oath. Therefore, it is not necessary in the instant case to speculate about the potential prejudicial impact of the question upon the jury.

The decision of the Court of Appeals is reversed, and the case remanded for consideration of an issue not addressed by the Court of Appeals.

74 Mich App 150; 253 NW2d 691 (1977) reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Joel M. Shere* for defendant.

PER CURIAM. On January 28, 1975, the defendant was convicted by a jury of the charge of first-degree murder. MCLA 750.316; MSA 28.548. He was subsequently sentenced to life imprisonment.

Defendant thereafter appealed to the Court of

Appeals. That Court, in a published per curiam opinion, reversed the defendant's conviction because of a prosecutorial inquiry upon cross-examination of the defendant as to whether or not the defendant believed in God. The following colloquy took place:

"*Q [Mr. Easton, Assistant Prosecuting Attorney]:* Didn't you tell the doctor this towards the end of the Brevitol statement: 'The guy didn't want to give me any money I wanted so I just shot him'?

"*A [defendant]:* I guess I did say it if it's in the statement.

"*Q:* Then you did carry out a plan. You didn't get what you wanted and you knew you had a gun with you and you just shot him, is that right?

"*A:* No.

"*Q:* It's in the statement.

"*A:* So. There's a lot of lies in the statement.

"*Q:* Now, your *[sic]* saying that that might be a lie too?

"*A:* I'm not saying it might be; I'm saying it is.

"*Q:* When do we know that your *[sic]* telling the truth and when your *[sic]* lying? We just have to take your * * *. Do you believe in God?

"*The Court:* Just a minute please, strike that question. Disregard that question, members of the jury. Are you aware that you are under oath?

"*The witness [defendant]:* Yes." *People v Arthur Burton,* 74 Mich App 150, 151–152; 253 NW2d 691 (1977).

The Court of Appeals felt constrained to reverse in light of MCLA 600.1436; MSA 27A.1436[1] and our opinion in *People v Hall,* 391 Mich 175; 215 NW2d 166 (1974).

---

[1] MCLA 600.1436; MSA 27A.1436 provides:

"No person may be deemed incompetent as a witness, in any court, matter or proceeding, on account of his opinions on the subject of religion. No witness may be questioned in relation to his opinions on religion, either before or after he is sworn."

In *Hall, supra,* we reversed the defendant's conviction because of prosecutorial inquiry into the defendant's belief in a Supreme Being. In doing so, we noted:

"If we were, on a case by case basis, to evaluate the entire record to determine if prejudice or manifest injustice occurred therein because of this type of question, we would emasculate our statute and the legislative intent behind it. Our statute clearly states that an accused is entitled to be tried and convicted without the question of his religious opinions ever being put in front of the judge or jury for their consideration. Whether the defendant hesitates, or unhesitatingly responds negatively or positively, or if he should quite properly refuse to respond, he still cannot avoid the risk of stimulating an offensively prejudicial reaction in some quarter of the jury. This Court feels that it is inappropriate for it to take it upon itself to determine whether or not such prejudicial reaction did in fact occur, when our statute clearly attempts to foreclose such review by forbidding the asking of the prejudicial question itself. A defendant is entitled to a trial free of such improper questions. Once the question is asked, this is no longer possible. A new trial is mandated." 391 Mich 175, 182–183.

The Court of Appeals quoted this same passage from *Hall* and found a basis for differentiating the instant matter:

"In contrast to *Hall,* the swift action of the judge below differentiates the present case from the facts in *Hall* and from the various hypothesized responses the Supreme Court believed a defendant might display when asked about a belief in God. Here the trial judge intervened immediately, ordered the question stricken, directed the jury to disregard it and inquired whether the defendant realized he was still under oath. Hence, the defendant had no time to mull over the prosecutor's question, to answer it or to refuse to respond. By asking

defendant whether he was aware that his testimony was still under oath, the judge on one hand impressed on defendant the sense of his obligation to be truthful and on the other diverted the jury's focus from an improper to a proper line of inquiry. We believe, therefore, that the judge's *sua sponte* response effectively dissipated 'the risk of stimulating an offensively prejudicial reaction in some quarter of the jury'. *Id.*" 74 Mich App 150, 153.

The Court of Appeals nevertheless felt bound by this Court's pronouncement in *Hall* and reversed defendant's conviction.

We agree with the distinction drawn by the Court of Appeals between the instant case and *Hall.* For much the same reasons this Court's recent decision in *People v Bouchee,* 400 Mich 253; 253 NW2d 626 (1977), is also distinguishable. Here it is not necessary to guess as to the potential prejudicial impact of the question and response thereto upon the jury. The trial judge, through swift and commendable action, obviated the necessity for appellate speculation.

Accordingly, in lieu of leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse the Court of Appeals and remand to that Court for consideration of the second issue raised in defendant's brief, but not addressed by the Court of Appeals in light of its decision.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.