PEOPLE v THEODORE JONES

Docket Nos. 27999, 28000, 28001. Submitted February 22, 1978, at
Detroit.—Decided April 17, 1978.

Theodore R. Jones was convicted of one count of assault with
intent to do great bodily harm less than murder and with two
counts of felonious assault in Sanilac County Circuit Court,
Arthur M. Bach, J. Defendant appeals. *Held:*

A new trial is mandated in a criminal trial where the
prosecution's cross-examination of two defense witnesses cre-
ated a potential for prejudice in regard to the religious prac-
tices and beliefs of the defendant and his witnesses.

Reversed and remanded.

BASHARA, J., dissented:

The prosecution's cross-examination of two defense witnesses
regarding their religious beliefs and those of the defendant was
not improper where the scope of the cross-examination was
confined only to the nature of the testimony elicited on direct
examination.

OPINION OF THE COURT

1. WITNESSES—CRIMINAL LAW—CROSS-EXAMINATION—RELIGIOUS BE-
LIEFS—STATUTES.

The prosecution's cross-examination of a defendant regarding the
defendant's qualifications as an ordained lay minister in his
church was not erroneous under the statute which prohibits
examining a witness as to his religious opinions where the
defendant himself testified that he was an ordained lay minis-
ter and the questions regarding his qualifications for that
position did not extend into any prejudicial area concerning his

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 5] 81 Am Jur 2d, Witnesses §§ 471, 478, 484, 497, 533.
Impeaching witness: propriety and prejudicial effect of impeaching
witness by reference to religious belief or lack of it. 76 ALR3d
539.
[4] 6 Am Jur 2d, Assault and Battery §§ 56–58.
[5] 81 Am Jur 2d, Witnesses § 618.

belief on the specific practices of the religion (MCLA 600.1436; MSA 27A.1436).

2. WITNESSES—CRIMINAL LAW—CROSS-EXAMINATION—RELIGIOUS BE-
LIEFS—CHURCH ATTENDANCE.

A question of a defendant, on cross-examination, regarding his attendance record at church, while arguably directed at the defendant's religious practice, reasonably falls within acceptable limits of cross-examination on a claim of church membership.

3. WITNESSES—CRIMINAL LAW—CROSS-EXAMINATION—RELIGIOUS BE-
LIEFS—STATUTES.

A defendant's conviction should be reversed and a new trial granted where the prosecution's cross-examination of two defense witnesses created a potential for prejudice in regard to the religious practices and beliefs of the defendant and his witnesses (MCLA 600.1436; MSA 27A.1436).

4. CRIMINAL LAW—ASSAULT—DIFFERENT DEGREES OF ASSAULT—SIN-
GLE ACT.

A defendant may be convicted of different degrees of assault resulting from a single act if the facts support the verdicts.

DISSENT BY BASHARA, J.

5. WITNESSES—CRIMINAL LAW—CROSS-EXAMINATION—RELIGIOUS BE-
LIEFS—STATUTES.

*Cross-examination of a defense witness which sought to disprove the defendant's claim of religious, moral and God-fearing qualities did not violate the statute which prohibits examining a witness as to his religious opinions where the scope of the cross-examination was confined only to the nature of the testimony elicited on direct examination which was designed to show the defendant's truthfulness and his adherence to the practice of abstinence from alcohol and the cross-examination directed attention on that testimony to show its inconsistency with the defendant's own trial testimony (MCLA 600.1436; MSA 27A.1436).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *J. Anthony Sykora,* Prosecuting Attorney, for the people.

*Cummings, Monaghan, Thomas & McColl* (by

*Michael McNamee)* and *Gromek & Bendure,* for
defendant on appeal.

Before: BEASLEY, P. J., and BASHARA and D. C.
RILEY, JJ.

D. C. RILEY, J. Defendant Theodore Roosevelt
Jones appeals his jury conviction of one count of
assault with intent to do great bodily harm less
than murder, MCLA 750.84; MSA 28.279, and two
counts of felonious assault, MCLA 750.82; MSA
28.277, for which he was sentenced to concurrent
terms of two-to-four and five-to-ten years in prison.

Defendant's first argument on appeal presents
this Court with the sensitive issue of cross-exami-
nation of witnesses regarding their religious opin-
ions and practices. Defendant asserted the de-
fenses of insanity and diminished capacity due to
consumption of alcohol. The questions posed re-
garding religious beliefs related to the claim that
defendant was so intoxicated that he lacked the
requisite specific intent.

On direct examination defendant testified that
he had experienced a religious conversion in 1953
and, as a result, had abstained from all drinking
for a period of some 22 years. Following his con-
version he was ordained a lay preacher in his
church. Jones testified that he began to drink
some two or three months prior to the date of the
offense because he was depressed over a continu-
ing illness. He testified further that he drank
heavily during the day of the incident and that he
had no memory of shooting anyone. His last recol-
lection was of passing out in a bar and then
awaking in jail the next morning.

On cross-examination defendant was asked how
often he attended church, what the qualifications

were to be ordained in his church, and about his religious training and study.

Defendant's son, Phil Jones, called as a defense witness, testified that he had never seen his father drink prior to the night in question, but he did not give any testimony concerning defendant's religious opinion on drinking. On cross-examination, the following question and answer occurred:

"Q. *[Prosecutor]* I take it that you say you had been in the Applegate Bar, that you don't share your father's religious views on drinking?

"A. *[Phil Jones]* No."

Defendant called several witnesses to testify as to his character and reputation. One such witness was Raymond Riggs, the pastor of defendant's church. On direct examination the pastor related the history of the church, his personal background and training, and his acquaintance with defendant and knowledge of defendant's church work. He stated that although defendant did not attend church services on a regular basis, he was a full member of the church. Reverend Riggs testified that under the tenets of the church, members were required to totally abstain from alcohol. As far as he was aware, defendant had lived up to that requirement.

On cross-examination the prosecutor asked if church members were required, on a regular basis, to reaffirm their belief in and adherence to the rule forbidding drinking. Reverend Riggs responded that such a requirement existed. The witness was then asked if he could reconcile defendant's trial testimony that he had begun to drink some two or three months prior to the date of the offense with his church testimony that he was abiding by the abstinence rule:

"Q. *[Prosecutor]* Is a person required on a periodic basis to profess their belief in this particular penitence?

"A. *[Raymond Riggs]* Yes, sir.

"Q. Are they required to declare they follow this particular penitence?

"A. Yes, sir.

"Q. Were you present when Mr. Jones testified today?

"A. Yes, sir.

"Q. Did you hear Mr. Jones testify from the stand that two to three months prior to this incident on the 24th of February, 1974 he commenced drinking?

"A. Yes, sir.

"Q. Did you hear him testify also that he has continued to drink on a periodic basis subsequent to this incident right up to the present time?

"A. Yes, sir.

"Q. Does that knowledge affect your opinion on his truthfulness and veracity?

"A. Yes, to the extent that it would be an exception to his mode of conduct and living, in deed *[sic]* so.

"Q. Can you reconcile his testimony that he continued to drink that he gave under oath here this morning, with his speaking in church that he was following total abstinence?

"A. No, no, not that particular point, no, sir.

"Q. How can you say that his reputation is good?

"A. Because up to this point the question asked of me was was he still in official fellowship with our church and I said yes and I said if this was continued he would be dealt with, you can rest assured.

"Q. The church would deal with this deviation from the faith?

"A. In deed *[sic]* so.

Defendant contends that the prosecution's cross-examination of himself and these defense witnesses violated MCLA 600.1436; MSA 27A.1436, which reads:

"No person may be deemed incompetent as a witness

in any court, matter or proceeding, on account of his opinions on the subject of religion. No witness may be questioned in relation to his opinions on religion, either before or after he is sworn."

We will deal with the allegations as to each witness in order.

We do not find the cross-examination of defendant erroneous under the statute. Defendant himself testified that he was ordained a lay preacher in his church. The prosecutor's questions regarding his qualifications for that position did not extend into any prejudicial area concerning his beliefs on the specific practices of the religion. While the question regarding his attendance record at church was arguably directed at defendant's religious practice, it reasonably falls within acceptable limits of cross-examination on a claim of church membership. *People v Bouchee,* 400 Mich 253, 262; 253 NW2d 626 (1977).

The question asked of defendant's son, Phil Jones, was facially violative of the statute. While defendant introduced testimony as to his own religious views on drinking, the religious opinion of this witness was not at issue in the trial. We might hesitate, however, to premise reversible error solely on this isolated question.

It is the cross-examination of Reverend Riggs which gives us the greatest concern. The prosecution brought out that defendant was required by the rules of his church to periodically reaffirm before the church his compliance with its tenets, including abstention from alcohol. The witness was then asked whether his opinion on defendant's credibility and reputation was affected by the disparity between his trial testimony, in which he admitted drinking, and his church testimony.

The relevancy of this cross-examination on the

issue of defendant's reputation for honesty and truthfulness is not disputed. Our concern is not with the relevance of the questions, but with the method.

The statute expressly states that questions as to religious opinions are not permissible. The purpose of the statute is to strictly avoid any possibility that jurors will be prejudiced against a certain witness because of personal disagreement with the religious views of that witness. This object recognizes the deep personal feelings many people hold on religion, feelings that may unavoidably conflict with a juror's sworn duty to decide solely on the evidence presented, without injection of personal prejudices.

The recent cases applying the statute are quite strict where any possibility of prejudice exists. In *People v Hall*, 391 Mich 175; 215 NW2d 166 (1974), the Supreme Court reversed where the defendant was asked, and answered, an inquiry as to whether he believed in God, even though the question was intended to remind the defendant that he was under oath. In *People v Burton*, 401 Mich 415; 258 NW2d 58 (1977), the Supreme Court, distinguishing *Hall, supra,* did not reverse where the question of whether the witness believed in God was asked, but only because the trial court's quick action in preventing an answer, striking the question, and cautioning the jury "obviated the necessity for appellate speculation" as to possible prejudice. 401 Mich at 418.

In *People v Bouchee, supra,* the facts were more closely akin to those in the case at bar. The defendant on direct examination had spoken of his church membership and his belief in the Bible to demonstrate his character. The trial court asked defendant questions concerning whether his stated

belief in the Bible was consistent with his claimed defense to the charged offense. The Court found such inquiry reversible error, stating:

"The prosecutor was fully entitled to challenge the defendant's claim of good character, either upon cross-examination or through extrinsic evidence in rebuttal. Such challenge might have taken the form *inter alia* of evidence of prior convictions, testimony contradicting the claimed church membership and attendance, or reputation evidence tending to disprove the claim of religious, moral and God-fearing qualities, if indeed such evidence existed. It would not have been competent, however, for the prosecutor to inquire of the defendant concerning the nature, substance and content of his religious beliefs in order to show that such beliefs were inconsistent with the qualities of good character claimed. Nor was it competent for the court to conduct such an inquiry. Aside from the debatable relevance of such an inquiry to rebut the claim of a moral, God-fearing and religious character, such questioning is expressly forbidden by the statute and our holding in *Hall, supra.*" 400 Mich at 262–263.

In addition, the *Bouchee* Court found error in the cross-examination of the defendant's character witness, who was his church pastor.

"Reverend Williams was called by counsel for the defendant as a character witness. The direct examination was carefully confined to an inquiry concerning the defendant's reputation in the community for veracity. Upon cross-examination, however, in an effort to explain and justify his claimed knowledge of the defendant's reputation for veracity, Reverend Williams stated, 'People who are connected with our church often says that Bouchee is a good man.' The expression 'good man' which was employed by the witness in an effort to explain the basis for his testimony concerning Bouchee's reputation for veracity did not offer justification for the prosecuting attorney to conduct a general in-

quiry concerning the defendant's entire character and specifically did not warrant any 'clarifying inquiry' concerning the defendant's religious beliefs and practices." 400 Mich at 265.

While the questions asked of Reverend Riggs in the present case were not concerned with religious beliefs as specifically as those found objectionable in *Bouchee,* nevertheless, the course of the cross-examination gave rise to the possibility of prejudice. Whatever the impact on defendant's credibility resulting from the testimony that he had lied about his resumption of drinking, an even stronger impact on his character may have been perceived by the jury since he had lied while participating in the periodic ritual affirming the tenets and practices of the church. It is not inconceivable that some of the jurors may have been more affected by his failure to confess his actions to the church than by the actions themselves. Even though defendant admitted to violating the church tenet on drinking, we read *Bouchee* as limiting cross-examination to exclude any reference to additional breaches of church doctrine.

We hold that the combined effect of the cross-examinations of Phil Jones and Reverend Riggs created a potential for prejudice in regard to the religious practices and beliefs of defendant and his witnesses. Reading the statute strictly, such potential mandates a new trial. *People v Hall, supra.*

We should make two further statements in the event of a new trial. If the facts support the verdicts, a defendant may be convicted of different degrees of assault resulting from a single act. See *People v Fields,* 66 Mich App 347; 239 NW2d 372 (1976). Second, the trial court should take care to instruct on the defense of intoxication as set forth

in *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973).

Reversed and remanded.

BEASLEY, P. J., concurred.

BASHARA, J. *(dissenting).* I must respectfully dissent.

The majority finds no error in the cross-examination of defendant and, apparently, would not reverse solely on the single question addressed by the prosecution to defendant's son. Reversal is based on the cross-examination of defendant's character witness, Reverend Riggs. My evaluation of that testimony differs from the characterization ascribed to it by the majority.

Stringent proscriptions have been placed upon inquiry into the religious beliefs, practices, and opinions of witnesses. *People v Hall,* 391 Mich 175; 215 NW2d 166 (1974), *People v Bouchee,* 400 Mich 253; 253 NW2d 626 (1977). However, the entire theory of the defense in this case was founded upon a particular aspect of defendant's religious practice, his abstinence from the consumption of alcohol. Defendant's contention was that his long abstinence resulted in a markedly accentuated deleterious effect from its consumption on the night of the crime, negating any possibility that he formed the requisite criminal intent.

The direct examination of Rev. Riggs encompassed testimony regarding the organization of the church, the qualifications that defendant had to exhibit as an ordained minister, required church attendance, the practice of total abstinence from alcohol, defendant's adherence to that practice, and defendant's reputation for truthfulness. The latter three aspects were focused upon by the prosecutor in his cross-examination. I believe that

examination was properly conducted in accordance with the authority quoted by the majority. Its scope was confined only to the nature of the testimony elicited on direct examination, *People v Bouchee, supra,* and elicited evidence "tending to disprove the claim of religious, moral and God-fearing qualities". *People v Bouchee,* 400 Mich at 262.

In the final analysis, Rev. Riggs' direct examination testimony was designed to show the defendant's reputation for truthfulness and his adherence to the practice of abstinence from alcohol. The cross-examination directed attention on that testimony to show its inconsistency with the defendant's own trial testimony, and thereby give the jury a basis for evaluating the defendant's reputation testimony theory of defense. To reverse on the basis of such a record would be *tantamount* to an absolute proscription on cross-examination where the subject matter in the direct examination testimony of a witness specifies certain religious practices and beliefs that form the primary basis of the defendant's theory of defense.

I would affirm the conviction.