## PEOPLE v CALLOWAY

Docket No. 87249. Submitted February 11, 1988, at Grand Rapids.
Decided July 18, 1988. Leave to appeal applied for.

Howard Everett Calloway, also known as Charles Arthur Callo-
way, was convicted by a jury in Kalamazoo Circuit Court,
Charles H. Mullen, J., of first-degree murder and possession of
a firearm during the commission of a felony. Defendant ap-
pealed.

The Court of Appeals *held:*

1. Defendant failed to show that the publicity surrounding
his case deprived him of a fair trial, having failed to provide a
transcript of the jury voir dire by which this Court can review
his claim and having failed to move for a change of trial venue.

2. Defendant did not raise in the trial court, and thus has not
preserved for appeal, the issue of whether evidence of certain
inculpatory statements defendant made to a police officer
should not have been admitted by the trial court based on the
absence of *Miranda* warnings. Appellate review of an issue not
raised in the trial court is appropriate where an important
constitutional question is raised regarding the admissibility of
evidence that is decisive of the outcome of the case. However,
such is not the case here since the *Miranda* rule is not in itself
a constitutional right, but, rather, is a procedural safeguard
designed to protect an individual's Fifth Amendment privilege
against self-incrimination, and the police officer's testimony was
not determinative of the outcome due to its equivocal nature.

3. The trial court was not obligated, sua sponte, to conduct a
hearing on the issue of the voluntariness of defendant's confes-
sion since there were no "alerting circumstances" which indi-
cated that defendant's volitional capacity was impaired.

4. The prosecution did not withhold evidence bearing on the

REFERENCES

Am Jur 2d, Appeal and Error § 508.

Am Jur 2d, Criminal Law §§ 748 *et seq.*

Am Jur 2d, Evidence §§ 250, 269, 529, 1080-1090.

Am Jur 2d, Trial §§ 260-264.

Am Jur 2d, Witnesses §§ 87, 89, 484, 533.

Pretrial publicity in criminal case as ground for change of venue.
33 ALR3d 17.

credibility of one of its witnesses. Contrary to defendant's claim, the prosecution maintained no file on the witness.

5. The prosecution, in its closing arguments, did not vouch for the credibility of its witnesses, argue facts not in evidence or make an argument that it was the jury's civic duty to support the police by convicting defendant.

6. Defendant was not denied a fair trial when the trial court refused his petition for a writ of habeas corpus to return a prosecution witness for further testimony. The witness had exclaimed, while the jury was in recess, that a spectator he identified in the court room had been hired by defendant to intimidate him from testifying. This claim is meritless since the jury was not present during this incident.

7. Reversal of defendant's convictions is mandated by improper questioning by the prosecution of one of its witnesses with regard to the witness' religious beliefs. However, this case, where the questions and answers regarding religion had little value in terms of swaying the jury, presents a good argument for the adoption of a harmless error rule regarding questioning on religious belief.

8. The trial court did not err in denying defendant's motion for a directed verdict. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crimes charged were proven beyond a reasonable doubt.

9. Defendant's claim of ineffective assistance of trial and appellate counsel is without merit.

10. The trial court did not abuse its discretion in denying defendant's motion for a new trial brought on a claim that the verdict was against the great weight of the evidence.

11. The trial court did not err in conducting an evidentiary hearing regarding the late endorsement of a res gestae witness by the prosecution, nor did it abuse its discretion in allowing the late-endorsed res gestae witness to testify in rebuttal.

Reversed.

WEAVER, J., concurred separately to state that prejudicial error resulting from questioning a witness regarding his religious beliefs cannot be deemed harmless.

1. CRIMINAL LAW — FAIR TRIAL — PUBLICITY — APPEAL.

A defendant, who claims on appeal that he was denied a fair trial due to pretrial and trial publicity, fails to show that such publicity deprived him of a fair trial where he fails to provide the Court of Appeals with a transcript of the jury voir dire and fails to move for a change of trial venue.

2. APPEAL — PRESERVING QUESTION.

The Court of Appeals will not, as·a general rule, review an issue raised for the first time on appeal, however, appellate review of an issue not raised in the trial court is appropriate where an important constitutional question is raised regarding the admissibility of the evidence which is decisive of the outcome of the case.

3. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS.

A trial court generally is not required to address the question of the voluntariness of a confession sua sponte; however, in cases where a substantial question of voluntariness is raised, certain "alerting circumstances," such as the defendant's mental, emotional or physical condition or evidence of police threats or other obvious forms of physical and mental duress, may impose a duty on the judge to assume a more active role and investigate the need for a hearing on the issue of voluntariness.

4. CRIMINAL LAW — TRIAL — CLOSING ARGUMENT.

A prosecutor's closing argument is proper if it is based upon the evidence and the jury is not called upon to decide a case on the basis of the prestige of the prosecutor's office; the people have the right to comment upon the testimony in a case, argue the facts and evidence that a witness is not worthy of belief and to contend that a defendant is lying.

5. CRIMINAL LAW — WITNESSES — RELIGIOUS BELIEFS — APPEAL.

A prosecutor may not inquire as to a witness' religious beliefs; a defendant's conviction will be reversed and a new trial will be ordered on appeal where the prosecutor questioned a witness regarding the witness' religious beliefs and no cautionary instruction regarding such questioning was given by the trial judge to the jury (Const 1963, art 1, § 18; MCL 600.1436; MSA 27A.1436).

6. CRIMINAL LAW — EVIDENCE — SUFFICIENCY OF EVIDENCE — APPEAL.

The Court of Appeals, in reviewing a claim that the evidence against the defendant was not sufficient to support a conviction, must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

7. CRIMINAL LAW — ASSISTANCE OF COUNSEL — APPEAL.

A motion for a new trial or for an evidentiary hearing is generally a prerequisite for appellate review of a defendant's claim

of ineffective assistance of counsel, unless the detail of the deficiency is apparent in the record to permit the Court of Appeals to decide the issue.

8. CRIMINAL LAW — EVIDENCE — APPEAL.

The question of whether a conviction is against the great weight of the evidence generally involves issues of the credibility of witnesses or circumstantial evidence; the Court of Appeals, in reviewing this issue on appeal, looks to whether there was an abuse of discretion by the trial court in denying a motion for a new trial rather than resolving credibility issues anew.

9. CRIMINAL LAW — EVIDENCE — REBUTTAL — APPEAL.

The decision to admit evidence in rebuttal rests within the trial court's discretion; if evidence is improperly admitted during rebuttal, reversal is required only if the error was so egregious as to result in a miscarriage of justice.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *James J. Lait,* Assistant Prosecuting Attorney, for the people.

*Marovich & Stroba* (by *Milton J. Marovich*), and Howard Everett Calloway, in propria persona, for defendant on appeal.

Before: CYNAR, P.J., and WEAVER and R. M. PAJTAS,* JJ.

CYNAR, P.J. Defendant was convicted by a jury of first-degree murder, MCL 750.316; MSA 28.548, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to life imprisonment for the murder conviction and two years for the felony-firearm conviction. The convictions followed an earlier jury trial in which the jury was unable to reach a unanimous verdict. Defendant appeals as of right. We reverse.

The second trial commenced on October 25,

* Circuit judge, sitting on the Court of Appeals by assignment.

1983. The instant charges arose out of the shooting death of Johnnie Lee Reed (also known as Johnny). Reed was shot on September 17, 1982, as he stood on the front porch of his residence at 606 Florence Street in Kalamazoo, Michigan. The shooting occurred sometime around noon.

Robert Lee Jones, a witness for the prosecution, placed defendant at the scene of the crime. Jones' testimony was offered as part of a plea-bargain agreement between Jones and the prosecutor. In exchange for testifying against defendant, Jones received immunity from prosecution for any involvement in the instant case.

On September 17, 1982, at about 11:00 A.M., Jones was at the Polar Bear store with his brother Jimmy Lee Jones when they saw defendant drive a blue van onto the store's parking lot. Defendant told them that he had a gun and he was "hunting" for Reed. The Jones brothers left the store. Sometime later, defendant went by Jones' house and motioned him over to the van. Jones got into defendant's van after they decided to commit a breaking and entering.

They drove to a house, but did not break and enter since the resident was at home. While defendant and Jones were driving around, defendant saw Reed walking up Florence Street. Defendant circled another block, stopped, told Jones to drive and park across from Reed's house. After they waited five to fifteen minutes, Reed came out of his house. Defendant reached out of the passenger window and shot Reed with a rifle as Reed was coming off the porch. Defendant fired five shots, three of which were fired before defendant told Jones to drive off.

Fifteen-year-old Ella Thompson was living with Reed before he was killed. She began living with Reed in October, 1981. Previously, Reed and his

wife, Ola Mae Reed, had argued about Reed and Thompson living together. Reed told Ola that he was going to stay with Thompson rather than return to Ola. Afterwards, Ola used to come by and sit on the front steps of Reed's house at different times during the day.

On the day of the shooting, Thompson was sweeping the floor in the apartment and Reed was on the front porch when Thompson heard shots. She went outside and saw Reed lying face down on the porch. Thompson had seen a blue van, but she could not identify it as the one belonging to defendant. Thompson also stated that Reed and Ola had argued on the morning he was killed.

Kalamazoo Police Officer Jack Orr testified that, about twenty-five minutes after hearing a police dispatch of the shooting and that a light blue van was a suspect vehicle, Orr spotted the van on North Westnedge Street. Orr felt the engine hood, which was very warm. He also saw ammunition on the dash tray. The van belonged to defendant.

Ola stated that she saw Reed at her home around 9:00 A.M. They argued and she told him to leave. Later in the day, Ola was in a blue van belonging to the Lively Stone Church, of which she was a member. Pastor Eldon Mitchell, who was driving, had picked up Ola "around noon" and she went to a downtown hospital. The prosecutor then asked Ola if she was a religious person and how long she has belonged to the church she attends.

Several Florence Street residents heard the shots and saw the blue van. However, none of the residents identified the van as belonging to defendant.

Officers Robert McFletcher and Thomas Martin testified that they arrested defendant on February 6, 1983. Martin related, without objection, defendant's statement in the booking area:

He and I had been speaking and I asked him to remove his prosthesis—he has got a wooden leg—so that I could examine it to make sure there was [sic] no weapons concealed in it or anything like that. As he did that, I asked him how he lost his leg, and he told me that he—he said to me, "That guy on the paper that I killed ran over me on a motorcycle." I asked him to repeat himself and he said, "That guy you say I killed on that paper ran over me on a motorcycle."

On cross-examination, Martin acknowledged that he may have misheard defendant, even though he thought that he had heard defendant's first statement very clearly.

On the fourth day of trial, the prosecutor informed the trial court of his intention to endorse Ethel Phillips, defendant's mother-in-law, as a witness, but the police could not serve her a subpoena because she would not come out of her house. The prosecutor claimed that Phillips was afraid because of threats made against her by defendant's family. The prosecutor asked the court to issue a capias writ in order for the officers to go into her house and bring her to court. The court issued the writ.

Afterwards, the prosecutor sought to endorse Phillips as a witness. The court denied the prosecutor's request for a late endorsement. However, the court permitted Phillips to testify as a rebuttal witness. Defense counsel vigorously objected to Phillips' testimony, claiming that defendant had not opened the door during his case which would entitle the prosecutor to call a rebuttal witness. The trial court ruled in favor of the prosecutor.

Phillips testified that, on the day Reed was killed, defendant came to her home between 12:10

P.M. and 12:20 P.M. to use the telephone. Phillips and defendant had the following conversation:

> He come [sic] to my house to use the phone, and then he said, "I think I got myself into a little trouble."
>
> Q. (By Mr. Christopherson, continuing) Did you say anything to him, then?
>
> A. I said, "I won't ask what kind."
>
> Q. What did he say, then?
>
> A. He said, "Well, that one guy that caused me to lose my leg, I think I got him."
>
> Q. After he stated—you know— "The one guy that caused me to lose my leg, I think I got him," what did you say after that?
>
> A. "Yes, was it bad?"
>
> Q. What did he say after that?
>
> A. He didn't know, but he found out later on.

Following his convictions, defendant moved to set aside the jury verdict and dismiss the charges due to the prosecutor's misconduct involving Phillips. The trial court denied defendant's motions.

Defendant raises numerous issues on appeal. First, he claims that he was denied a fair trial due to pretrial and trial publicity of his case. We first note that defendant has failed to provide an adequate record for us to review this issue by not supplying this Court with a transcript of the jury voir dire. This alone requires us to affirm. *People v Coons*, 158 Mich 735, 740; 405 NW2d 153 (1987), lv den 428 Mich 900 (1987). Having failed to provide this Court with the jury voir dire transcript and having failed to move for a change of venue, defendant has not met his burden of showing that the publicity deprived him of a fair trial.

Next, defendant claims that the inculpatory statement he made to Officer Martin should have

been excluded since he was not given the *Miranda*[1] warnings. In addition, defendant alleges that the trial court, on its own motion, should have conducted a *Walker*[2] hearing so as to test the voluntariness of defendant's statements.

Initially, we note that the issue of whether these statements were taken in violation of *Miranda* was not raised in the proceedings below. As a general rule, this Court will not review an issue raised for the first time on appeal. *People v Davis,* 122 Mich App 597; 333 NW2d 99 (1983). However, where an important constitutional question is raised regarding the admissibility of the evidence and is decisive of the outcome of the case, appellate review is appropriate. *People v Catey,* 135 Mich App 714, 722; 356 NW2d 241 (1984), lv den 422 Mich 940 (1985).

In this case, defendant has failed to meet either requirement so as to warrant appellate review of this issue. The *Miranda* rule is not in itself a constitutional right. Rather, it is only a procedural safeguard designed to protect an individual's Fifth Amendment privilege against self-incrimination. *People v Godboldo,* 158 Mich App 603, 605; 405 NW2d 114 (1986). Secondly, the statements testified to by Martin were not outcome determinative due to the equivocal nature of Martin's testimony. Martin testified that he may have misheard defendant's statements. Thus, we decline to review this claim.

In addition, we reject defendant's assertion that the trial court, sua sponte, should have conducted a *Walker* hearing to determine if defendant's statements were voluntarily made. In *People v*

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

*Hooks,* 112 Mich App 477, 480; 316 NW2d 245
(1982), lv den 413 Mich 902 (1982), citing *United
States v Powe,* 192 US App DC 224; 591 F2d 833
(1978), this Court set forth the rule regarding
when a trial judge, sua sponte, must test the
voluntariness of a confession:

> In *Powe,* the defendant was convicted by a jury
> of distributing a controlled substance. That defen-
> dant stated that her confession was made in re-
> sponse to offers of leniency and, therefore, was not
> voluntary. The court held that generally a trial
> court is not required to address a question of the
> voluntariness of a confession *sua sponte.* However,
> certain "alerting circumstances" may impose a
> duty on the judge to assume a more active role
> and investigate the need for a hearing on the
> voluntariness of a confession. Alerting circum-
> stances may be a defendant's mental, emotional or
> physical condition, evidence of police threats, or
> other obvious forms of physical and mental duress.
> *Powe, supra,* 843, fn 31. The court limited its
> holding to cases where "a substantial question of
> voluntariness was raised." *Id.,* 844.

See also *People v Ray,* 156 Mich App 31, 48; 401
NW2d 296 (1986).

In this case, there were no "alerting circum-
stances" indicating that defendant's volitional ca-
pacity may have been impaired. Thus, the trial
court was not obligated, sua sponte, to conduct a
*Walker* hearing and test the voluntariness of de-
fendant's statements.

Next, defendant alleges several instances of pro-
secutorial misconduct which deprived him of a fair
trial. We will address each instance separately.

Defendant claims that, despite counsel's having
obtained a discovery order, the prosecutor with-
held certain information on Jones' credibility. Be-
fore Jones testified, defense counsel informed the

trial court of his intention to bring an oral motion
to allow him to look in chambers at the prose-
cutor's file on Jones. Counsel claimed that the
prosecution had used Jones as its witness on many
occasions and counsel sought "at least a produc-
tion of the list of cases." The prosecutor claimed
that no such file existed.

It has long been the law in this state that a
defendant is entitled to have produced at trial all
the evidence bearing on his guilt or innocence
which is within the prosecutor's control, including
prior statements of witnesses which may be used
for impeachment. *People v Dellabonda,* 265 Mich
486, 500-501; 251 NW 594 (1933); *People v Florin-
chi,* 84 Mich App 128, 133; 269 NW2d 500 (1978),
lv den 405 Mich 828 (1979). Further, in *People v
Turner,* 120 Mich App 23, 32-33; 328 NW2d 5
(1982), this Court stated:

> Discovery exists to allow the defendant a decent
> opportunity to prepare and to extend to him the
> fundamental fairness which the adversary system
> seeks to provide. *State v Johnson,* 524 SW2d 97,
> 101 (Mo, 1975). Furthermore:
>
> "[A] principal purpose of discovery is to advise
> defense counsel what the defendant faces in stand-
> ing trial; it permits a more accurate evaluation of
> the factors to be weighed in considering a disposi-
> tion of the charges without trial. While we cannot
> know whether such disclosure would in this case
> have led to disposition without trial, we do know
> that such disclosure does result in such disposi-
> tions in many cases." *Lewis, supra,* 167 US App
> DC [232] 236; 511 F2d [798] 802 [1975].

In the within case, the prosecutor did not refuse
to disclose materials, reports, or evidence to defen-
dant. There was simply no file on Jones. Defense
counsel claimed that he had information from

other attorneys that they had had cases in which
Jones was a prosecution witness. However, counsel
could not provide an explanation why he could not
obtain the names of these other cases from his
sources. Thus, defendant has not shown that the
prosecutor withheld discoverable material or mis-
represented that all material was provided.

Defendant claims that the prosecutor, in closing
argument, vouched for the credibility of his wit-
nesses, argued facts not in evidence and made a
civic duty argument. We disagree.

A prosecutor's closing argument is proper if it is
based upon the evidence and the jury is not called
upon to decide a case on the basis of the prestige
of his office. *People v Yearrell,* 101 Mich App 164,
167; 300 NW2d 483 (1980). The people have the
right to comment upon the testimony in a case,
argue the facts and evidence that a witness is not
worthy of belief and to contend that a defendant is
lying. *People v Jansson,* 116 Mich App 674, 693;
323 NW2d 508 (1982).

As to defendant's first two claims of improper
argument by the prosecutor, we have examined
the comments in their context and are convinced
that no error occurred since the prosecutor was
merely commenting on the witnesses' credibility, a
proper area for closing argument, especially when
there is conflicting evidence and the question of
defendant's guilt or innocence turns on which
witness is to be believed. *People v Flanagan,* 129
Mich App 786, 795-796; 342 NW2d 609 (1983). We
also find no merit to defendant's claim that the
prosecutor made a civic duty argument. Urging
the jury to place credibility in the testimony of
Officers Gay and Hannechow and former prose-
cutor Reynolds did not amount to a civic duty
appeal to the jury to support the police by convict-
ing defendant. See *People v Wright (On Remand),*

99 Mich App 801, 808-811; 298 NW2d 857 (1980), lv den 410 Mich 854 (1980).

Defendant also complains that he was denied a fair trial when the court refused his petition for a writ of habeas corpus to return Jones for further testimony. During a jury recess, Jones apparently stood up in court and identified a spectator as the assailant hired by defendant, who allegedly shot up his car, kidnapped him and threatened to kill him if he testified against defendant. This argument is totally specious since the jury was not present during this incident.

In his fifth claim of error, defendant alleges that the prosecutor injected error by asking Ola Mae Reed if she was a religious person. The prosecutor asked:

*Q.* Ola are you a religious person.
*A.* Yes.
*Q.* Okay. How long have you belonged to the church you go to now?
*A.* For nine years.

This line of questioning by the prosecutor is clear error. In *People v Hall*, 391 Mich 175, 179-183; 215 NW2d 166 (1974), the Supreme Court held that a prosecutor's question to the defendant inquiring whether he believed in a Supreme Being, although it was merely a reminder to the defendant that he was under oath, and despite no objection by defense counsel, violated Const 1963, art 1, § 18[3] and MCL 600.1436;

---

[3] The constitutional provision provides:

No person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief.

MSA 27A.1436[4] and constituted error requiring reversal. The Court noted that the statute left little room for analysis by the Court since asking this question was clear legal error. *Id.*

In addition, the *Hall* Court rejected any application of a harmless error analysis to violations of the statute:

> The state argues, and it was so held by the Court of Appeals, that since no objection to the question appears on the record, and since "manifest injustice" was not shown, this type of error does not require reversal. We disagree. If we were, on a case by case basis, to evaluate the entire record to determine if prejudice or manifest injustice occurred therein because of this type of question, we would emasculate our statute and the legislative intent behind it. Our statute clearly states that an accused is entitled to be tried and convicted without the question of his religious opinions ever being put in front of the judge or jury for their consideration. Whether the defendant hesitates, or unhesitatingly responds negatively or positively, or if he should quite properly refuse to respond, he still cannot avoid the risk of stimulating an offensively prejudicial reaction in some quarter of the jury. This Court feels that it is inappropriate for it to take it upon itself to determine whether or not such prejudicial reaction did in fact occur, when our statute clearly attempts to foreclose such review by forbidding the asking of the prejudicial question itself. A defendant is entitled to a trial free of such improper questions. Once the question is asked, this is no longer possible. A new trial is mandated. [391 Mich 182-183.]

The *Hall* holding was reaffirmed in *People v*

---

[4] The statute provides:

No person may be deemed incompetent as a witness in any court, matter or proceeding, on account of his opinions on the subject of religion. No witness may be questioned in relation to his opinions on religion, either before or after he is sworn.

*Bouchee,* 400 Mich 253; 253 NW2d 626 (1977). In *People v Wells,* 82 Mich App 543, 545-546; 267 NW2d 448 (1978), lv den 405 Mich 828 (1979), this Court reversed the defendant's second-degree criminal sexual conduct conviction, finding a violation of the *Hall* holding when the prosecutor, on direct examination, asked the complainant if she attended church. Judge KELLY dissented in *Wells,* claiming that the *Hall* holding should be subjected to a harmless error analysis as provided in MCL 769.26; MSA 28.1096 where there was no objection to the testimony.

In *People v Burton,* 401 Mich 415, 418; 258 NW2d 58 (1977), the Court distinguished *Hall* and *Bouchee* and found no violation of *Hall* since in *Burton,* before the defendant answered the question regarding his belief in God, the trial court quickly intervened and instructed the jury to disregard the question. The Court felt that the trial court's swift action obviated the need for appellate speculation whether defendant was prejudiced by this question.

As indicated earlier, the questions were improper. Reversal of defendant's convictions is thus mandated. Unlike in *Burton, supra,* there was no cautionary instruction by the trial court. The witness was permitted to answer the questions. Although we are reversing, we wish to express our disagreement with the *Hall* prohibition against the application of a harmless error analysis. The inquiry herein involved two brief questions to which the answers totalled four words. Further, the two brief questions and two brief answers could only have uncertain meaning to the listener. While the questions should not have been asked, the questions and the answers have little value in terms of swaying the jury. We are convinced the improper questions had no bearing in determining the ques-

tion of defendant's guilt. In this case, because a harmless error analysis is appropriate, it is suggested the Supreme Court revise *Hall* and its progeny.

Defendant also challenges the trial court's denial of his motion for a directed verdict. More specifically, defendant does not argue that the prosecutor failed to establish the requisite elements of first-degree murder. Instead, he alleges that the evidence was insufficient because Jones was an inherently incredible witness. This argument is totally spurious. In reviewing a claim for the denial of a directed verdict motion, we view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980); *People v Marks,* 155 Mich App 203, 219; 399 NW2d 469 (1986). It is well settled that the credibility of witnesses is a matter within the province of the jury. *Johnson v Corbet,* 423 Mich 304, 314; 377 NW2d 713 (1985). Thus, the trial court properly denied defendant's directed verdict motion.

Defendant also claims that he was denied effective assistance of counsel at his preliminary examination, trial and appeal. Initially, we note that defendant did not move for a new trial or for a *Ginther*[5] hearing. Generally, this is required unless the error is apparent from the record for this Court to review the issue. *People v Juarez,* 158 Mich App 66, 73; 404 NW2d 222 (1987). We, however, decline to review defendant's claim that he received ineffective assistance of counsel either at the preliminary examination or trial.

[5] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

As to his claim of ineffective appellate counsel, this claim is wholly meritless, since this Court is reviewing all of defendant's claims of trial errors.

We also reject defendant's assertion that the trial court improperly denied his motion for a new trial on the basis that the verdict was against the great weight of the evidence.

The question of whether a conviction is against the great weight of the evidence generally involves issues of credibility or circumstantial evidence. *People v McCumby,* 130 Mich App 710, 717; 344 NW2d 338 (1983), lv den 419 Mich 911 (1984). In reviewing this issue on appeal, the Court looks to whether there was an abuse of discretion in denying the motion for a new trial rather than resolving credibility issues anew. *People v Atkins,* 397 Mich 163, 172; 243 NW2d 292 (1976). An abuse of discretion will be found only where the trial court's denial of the motion was manifestly against the clear weight of the evidence. *People v Ross,* 145 Mich App 483, 494; 378 NW2d 517 (1985). We find no abuse of discretion. The evidence was conflicting. It was for the jury to decide what weight it should assess to the testimony. Thus, there was no error.

In addition, defendant claims that it was improper for the court to permit an evidentiary hearing to allow the prosecutor to explain the circumstances surrounding his decision to withhold Phillips' endorsement until just prior to his proofs. In his motion for a new trial, defendant bootstrapped his claim of improper rebuttal testimony by Phillips to the court's denial of the late endorsement of this witness claiming that she was a res gestae witness and the prosecutor was not duly diligent in producing her. We disagree. Since defendant claimed that Phillips was a res gestae witness and the prosecutor was not duly diligent

in endorsing her as a witness, the court was required to hold an evidentiary hearing to decide these questions. See *People v Pearson,* 404 Mich 698, 721-723; 273 NW2d 856 (1979), reh den 406 Mich 1104 (1979).

Finally, defendant claims that the trial court erred in allowing Phillips to testify in rebuttal. The decision to admit evidence in rebuttal rests within the trial court's discretion. *People v Hubbard,* 159 Mich App 321, 327; 406 NW2d 287 (1987). If evidence is improperly admitted during rebuttal, reversal is required only if the error was so egregious as to result in a miscarriage of justice. *Id.*

We find no abuse of discretion. On August 5, 1983, the trial was convened to hear the prosecution's motion to strike defendant's alibi defense, on the basis that the notice of alibi was deficient for lack of specificity. Although Phillips was listed as an alibi witness on defendant's original notice, her name was stricken by defendant at the August 8, 1983, hearing. The prosecution withdrew its motion to strike defendant's alibi defense. Phillips was not among the names of rebuttal witnesses on the prosecutor's list of witnesses endorsed on the information. Phillips did not testify in the first trial. The defendant did not testify either. Defendant presented an alibi through Tracy and Leon Snell. Snell's testimony supported defendant's alibi since Snell claimed that defendant was with him during the time the crime was committed. Phillips' testimony directly rebutted Snell's testimony since she stated that defendant came to use her phone during the time he was allegedly with Snell. Thus, it was not error to allow Phillips to testify in rebuttal.

Reversed.

R. M. PAJTAS, J., concurred.

WEAVER, J. *(concurring)*. I concur with my colleagues that the prosecutor's questioning of Ola Mae Reed was error requiring reversal because no cautionary instruction was given. However, I do not believe that the thoughtful analysis provided by *People v Hall,* 391 Mich 175, 179-183; 215 NW2d 166 (1974), needs revisiting, since in my view a prejudicial error of such magnitude cannot be deemed harmless.